IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ernesto Mendoza,                                        Case No. 3:08CV2321

             Plaintiff

    v.                                                  ORDER

AutoZone, Inc.,

             Defendant

This is an employment discrimination case. Plaintiff Ernesto Mendoza alleges that defendant AutoZone, Inc. (AutoZone) violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, Ohio Revised Code §§ 4112.02 and 4112.99, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*[1] Plaintiff claims that defendant passed him over for promotion, treated him less favorably than other employees, harassed him, and retaliated against him for filing complaints with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC). Plaintiff seeks injunctive relief and compensatory and punitive damages.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

---

[1] Plaintiff has abandoned his age discrimination claim. *See* Doc. 27 ("It is noted that Plaintiff admitted in his deposition that age was not an issue in the promotions. Therefore, this opposition will address national origin and race discrimination and retaliation issues.").

Pending is defendant's motion for summary judgment [Doc. 23]. For the reasons discussed below, the motion shall be granted.

## Background

Plaintiff was a full-time senior parts sales employee of the Woodville Road AutoZone in Toledo from April, 2004, until he resigned in 2009. Plaintiff is Mexican.

AutoZone refers to its store employees as either "red shirts" or "gray shirts." Red shirts hold non-managerial positions including customer sales representatives and senior parts sales. Gray shirts hold managerial positions including parts sales manager, assistant store manager, and store manager. Plaintiff was a "red shirt" employee.

Plaintiff states he was promised a $1.00 hourly raise by then-district manager Jim Pirc for each year he remained employed by AutoZone. He received the raise once, but did not receive it after 2005.

On December 12, 2006, plaintiff filed a discrimination charge with the Ohio Civil Rights Commission (OCRC). In it, he alleged that he was harassed by store manager J. J. Millsaps for speaking to a co-worker in Spanish. [Doc. 22-2, at 23]. Millsaps also referred to Mexican-American customers as "your people" when speaking to plaintiff.

Plaintiff's coworkers also gossiped about him. Specifically, he contends that they made up a story about an irate customer who threatened to come into the store and shoot him. He also contends that a former store manager came to the store to harass him repeatedly.

In late 2006, Pirc promoted Mike Fitch, a white employee, from red shirt to gray shirt. AutoZone had previously demoted Fitch because $1,000 was missing from the safe in his store. The $1,000 was, however, later found.

2

Pric stated that he did not promote plaintiff to this position because of plaintiff's attendance problems, lack of leadership and difficulty operating defendant's computer system.

AutoZone investigated plaintiff's 2006 OCRC charge, and terminated Millsaps. Plaintiff alleges that his coworkers shunned him for a period of time after Millsaps' termination.

In March, 2007, Fitch issued plaintiff a "corrective action review" for helping a Spanish-speaking customer out of turn.[2] Plaintiff states that Jack Pinkerton, then-district manager, told plaintiff he would not approve this disciplinary action.

In May and June, 2007, store manager Michael Johnson scheduled a white part-time employee, Teiah Briscoe, for more hours than plaintiff. Briscoe did not, however, actually work more hours than plaintiff. Also, twice in 2007, Johnson accused plaintiff of having a shortage in his cash register.

Johnson also, at some point, asked plaintiff whether he thought the national language should be English and asked him whether he'd ever been to "Beaners," a local coffee shop.

On June 13, 2007, plaintiff filed a second charge with the OCRC. He alleged discrimination and retaliation based on race and national origin because of the scheduling disparity with Briscoe and the shortage accusation. [Doc. 22-2, at 24]. On April 10, 2008, the OCRC dismissed this charge, finding that there was no probable cause to believe plaintiff had been discriminated against based on his national origin, race or to believe defendant had retaliated against plaintiff. [Doc. 23-2, at 29].

In October, 2007, district manager Pinkerton promoted Louis Ketron, a white individual, to a "gray shirt" position – parts sales manager. Ketron had not graduated from high school, but has

---

[2] "Corrective action reviews" are written disciplinary reports issued by AutoZone supervisors.

a GED. Ketron had also worked in the automotive industry for a long time, including in a junkyard and in his father's used car lot.

Plaintiff filed a third discrimination charge with the OCRC on November 19, 2007. In this charge, he alleged discrimination and retaliation because defendant promoted Ketron. [Doc. 22-2, at 25-26]. The OCRC dismissed this charge on September 11, 2008, finding that there was no probable cause to believe plaintiff had been discriminated against in promotion based on his race or national origin. [Doc. 22-2, at 20].

In March, 2008, Pinkerton transferred Eloy Perez to a different AutoZone store and promoted him to a "gray shirt" position – parts sales manager. Perez had a felony record, but Pinkerton was unaware of this at the time of his promotion.

Plaintiff filed another charge with the OCRC on April 23, 2008, challenging Perez's promotion and alleging that AutoZone permitted Perez to harass him. [Doc. 22-2, at 28-29].

Sometime in 2009, Pinkerton hired Kimberly Rometski as a "gray shirt" parts sales manager at the Woodville Road AutoZone. Rometski had previously worked as a parts sales manager at a different AutoZone location.

Pinkerton states that he did not consider plaintiff for any of these three promotions because:

[H]e lacked the requisite reliability, knowledge, and leadership qualification[s] for the position. Many of his coworkers did not like working with Mr. Mendoza because he was not a team player. He also got into heated arguments with his coworkers and customers . . . He also had serious attendance problems. He did not display a good working knowledge of AutoZone's computer system.

[Doc. 23-1, at 3].

Plaintiff admitted in deposition to having attendance problems throughout his employment at AutoZone. Supervisors issued plaintiff several "corrective action reviews" between 2007 and

2009 for failure to report to work, or failure to notify a supervisor that he would not be in or would be late.

Plaintiff does not know what criteria AutoZone used for promotions.

Plaintiff's employment performance evaluations from 2006 and 2007 indicate overall evaluations of "achieves expectations," [Doc. 27-1] and "expectations fully met," [Doc. 21-1, at 1], respectively. These were not the highest possible ratings.

Plaintiff testified that he left his employment with AutoZone because he wanted to access his 401(k) to finance this litigation.

Plaintiff claims defendant discriminated against him by: 1) passing him over for promotion, 2) accusing him of cash shortages; 3) scheduling a part-time employee for more hours than him; 4) allowing co-workers to shun him; 5) failing to provide him a promised raise; and 6) harassing him. Plaintiff also alleges that most of these actions were retaliation after plaintiff filed discrimination complaints with the OCRC.

Defendant has moved for summary judgment on all claims. I first address plaintiff's discrimination claims, and then his retaliation claims.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477

5

U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construes all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

### Discussion

### I. Discrimination

Title VII prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

### A. Failure to Promote

Plaintiff argues that defendant discriminated against him based on his national origin by promoting other individuals to management – or "gray shirt" – positions.

Defendant contends that it is entitled to summary judgment because plaintiff cannot show he was similarly situated those promoted. Defendant contends in the alternative that plaintiff cannot show that defendant's reasons for not promoting him are pretextual.

At the summary judgment stage, a plaintiff must produce either direct or circumstantial evidence of discrimination to prevail on a Title VII national origin discrimination claim. *See, e.g.*, *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

6

In the absence of direct evidence of discrimination – as in the instant case – I apply the three step *McDonnell Douglas/Burdine* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *see also DiCarlo*, *supra*, 358 F.3d at 414.

At the first step, plaintiff must establish a *prima facie* case. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000). To establish a *prima facie* case in the failure-to-promote context, plaintiff must show: 1) he is a member of a protected class; 2) he was qualified for promotion; 3) he was considered for and denied the promotion; and 4) other employees of similar qualifications who were not members of the protected class received promotions. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009).[3]

A plaintiff who successfully establishes a *prima facie* case receives the benefit of a presumption that the employer unlawfully discriminated against him. *Burdine*, *supra*, 450 U.S. at 254. The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [action].'" *Id.* at 253 (quoting *McDonnell Douglas*, *supra*, 411 U.S. at 802). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

Plaintiff can establish pretext by showing that the defendant's proffered reason: 1) had no basis in fact, 2) did not actually motivate the challenged conduct; or 3) is insufficient to explain the challenged conduct. *Dews*, *supra*, 231 F.3d at 1021.

---

[3] Title VII standards for a discriminatory failure to promote claim are "equally applicable" to claims under O.R.C. § 4112. *Dews*, *supra*, 231 F.3d at 1021 n.2. I therefore analyze both claims together here.

Throughout this burden shifting framework "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, *supra*, 450 U.S. at 253.

Defendant argues that plaintiff cannot establish a *prima facie* case because he has failed to establish the fourth element – that he was similarly situated to those who received promotions – Fitch, Ketron, Perez and Rometski.[4]

Plaintiff replies that his performance evaluations show he "was fully qualified in all areas rated." [Doc. 27, at 14].

To meet the fourth prong of the *prima facie* case, "it is incumbent upon the plaintiff to establish that []he and the non-protected person who ultimately was hired for the desired position had similar qualifications." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005). An employee need only show that he satisfied an employer's "objective" qualifications. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003).

As the Sixth Circuit explained:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated *in all respects* . . . Thus to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (internal citations omitted).

---

[4] Because defendant offers no argument about the first three elements of a *prima facie* case, I note only that plaintiff is Mexican and thus a member of a protected class. I thus proceed assuming *arguendo* that plaintiff can show he was qualified for promotion, and was considered for and denied the promotions. *Upshaw*, *supra*, 576 F.3d at 585.

Simply showing that the "comparable" person applied for the same position is insufficient to satisfy plaintiff's burden. *White*, *supra*, 429 F.3d at 241-42. Plaintiff's own opinion that he was more qualified is similarly insufficient. *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) (stating that plaintiff's" perception of his competence, and the incompetence of those competing against him[] is irrelevant"); *see also Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 n.5 (6th Cir. 2002) (noting that "conclusory allegation[s] that [are] not supported by specific facts in the record" are insufficient to survive summary judgment); *Hartsel v. Keys*, 87 F.3d 795, 801-02 (6th Cir. 1996) (holding that employee's subjective belief as to why she was terminated fails to satisfy summary judgment standard).

It is undisputed that promotion decisions at the AutoZone store where plaintiff worked were based on three factors: reliability, knowledge and leadership.[5] While this is not a written standard, plaintiff has provided no evidence that AutoZone did not apply these factors in the promotions at issue.[6]

Plaintiff fails to present any evidence that he was similarly situated in reliability, knowledge and leadership to those individuals promoted. Plaintiff, has, in fact, failed to provide *any* evidence of the performance or disciplinary history of the persons whom the company promoted to show they are comparable to his own.

---

[5] Both district managers at times relevant to plaintiff's claims – Pirc and Pinkerton – state that these are the three criteria they used for determining who to promote. Plaintiff has offered no evidence to rebut this.

[6] Plaintiff points to Regional Human Resources Manager David Slone's deposition testimony that there are no written criteria for promotion and that individual promotion decisions are up to the store and district managers. This does not, however, contradict Pirc and Pinkerton's testimony that *they*, the district managers of the Toledo district where plaintiff worked, considered reliability, knowledge and leadership.

Plaintiff admitted in deposition that he did not know how his employment record compared to those who were promoted. Plaintiff, rather, simply points to different aspects of the promoted individuals' backgrounds, which, according to his own subjective assessment, should have resulted in his being promoted. He contends that Fitch should not have been promoted because he had previously been demoted from gray shirt to red shirt because of a $1,000 shortage. He argues that Ketron was not qualified for promotion because he did not graduate from high school. Finally, he states that Rometski was always sick.[7]

None of these contentions speak directly to the promoted employee's reliability, knowledge or leadership abilities. Plaintiff has submitted no evidence to show that a previous demotion or lack of a high school diploma disqualified a person from promotion at AutoZone. Plaintiff also testified that Rometski's absences were excused because they were a result of illness. *See Wrenn*, *supra*, 808 F.2d at 502 (6th Cir. 1987) (stating that "[i]n a Title VII case  .  .  .  we look to the employer's motivation, not the applicant's perceptions, or even an objective assessment of what qualifications are required for a particular position"). These factors do not, thus, speak to whether plaintiff was similarly qualified.

---

[7] Plaintiff also contends that Perez should not have been promoted because he has a felony record. In deposition, however, plaintiff stated that Perez is also Mexican. Perez is thus not outside the protected class, and is not an apt comparable for purposes of Title VII. *See Upshaw*, *supra*, 576 F.3d at 585 (noting that for the fourth element of a *prima facie* case, plaintiff must show "other employees of similar qualification *who were not members of the protected class* received promotions" (emphasis added)). Plaintiff further admitted in deposition that he is not alleging national origin discrimination in the promotion of Perez:

> Q: So the fact that you didn't receive the promotion that Mr. Perez ultimately got didn't have anything to do with national origin?
> A: No, it was retaliation.

[Doc. 22-1, at 101].

10

Plaintiff additionally admitted in deposition that he had attendance problems throughout his employment with AutoZone. Supervisors issued plaintiff a corrective action reviews in both 2007 and 2008 for failure to call and report his absence from work. Between April and August, 2009, supervisors issued seven corrective action reviews to plaintiff for either failure to report for work, or failure to notify a supervisor that he would be late or absent.[8]

While plaintiff submits his own performance appraisals from 2006 – where he was rated "achieves expectations" (third on a scale of four ratings from "fails to meet expectations" to "exceeds expectations") [Doc. 27-1] – and 2007, where he was rated "expectations fully met" (third on a scale of five ratings from "expectations not met" to "exceptional") [Doc. 21-1, at 1] – he provides nothing for me to compare them to.[9]

While plaintiff was rated "achieves expectations," higher ratings were possible. Where plaintiff's evaluations are not totally exemplary, the burden is on him to show that the evaluations of those promoted were the same or lower than his. *See White*, *supra*, 492 F.3d at 242 ("[I]t is incumbent upon the plaintiff to establish that []he and the non-protected person who ultimately was hired for the desired position had similar qualifications."). Plaintiff has failed to submit any evidence to show that any of the individuals promoted had similar or lower performance evaluations.

---

[8] Plaintiff argues that defendant "[c]it[es] attendance issues that actually surfaced largely in 2009, after the implementation of a no fault point system . . . [and] concludes, erroneously, that Plaintiff had an attendance problem throughout all of his employment." [Doc. 27, at 13-14]. Plaintiff, however, as discussed above, admitted in deposition to having attendance problems throughout his employment with AutoZone. The 2007 corrective action review, additionally, is dated August 31, 2007, approximately one month before Ketron's promotion.

[9] Both of plaintiff's performance evaluations indicate a need for improvement in taking initiative. In 2006, he was rated a "1" out of "3 " in the category "Takes initiative." [Doc. 27-1]. In 2007, his supervisor noted, "Take initiative. Do what needs to be done before having to be asked to do it." [Doc. 21-1, at 1].

Plaintiff's subjective belief that he was better qualified is insufficient to survive summary judgment. *Wrenn*, *supra*, 808 F.2d at 502; *Hopson*, *supra*, 306 F.3d at 434 n.5.

Plaintiff's argument that he was "fully qualified in all areas rated," [Doc. 27, at 14], is thus unavailing. He has failed to meet his burden of showing that he is similarly situated to those promoted and summary judgment is granted to defendant on the failure to promote discrimination claim.

## B. Other Discrimination Claims

To establish a *prima facie* case of national origin or racial discrimination, plaintiff must show he: 1) is a member of a protected class; 2) suffered an adverse employment action; 3) was qualified; and 4) was treated differently than non-protected class employees for the same or similar conduct. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).

"An adverse employment action is an action by the employer that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (internal citation and quotation omitted).

Being shunned or ostracized by coworkers does not constitute adverse employment action. *Johnson v. Weld County*, 594 F.3d 1202, 1216 (10th Cir. 2010) (holding that coworkers avoiding plaintiff and giving her the "cold shoulder" is not adverse employment action); *Stewart v. Miss. Transp. Commm'n*, 586 F.3d 321, 331-32 (5th Cir. 2009) (holding that being "chastised by superiors and ostracized by coworkers" does not amount to a materially adverse employment action); *Mlyncxak v. Bodman*, 442 F.3d 1050, 1061 (7th Cir. 2006) (holding that shunning by coworkers is

12

not adverse employment action); *Flannery v. Trans World Airlines, Inc.*, 160 F.3d 425, 428 (8th Cir. 1998) (holding that shunning is not an adverse employment action where a plaintiff does not allege that it resulted in a reduction in salary, benefits, seniority or responsibilities).

Being disciplined or counseled is similarly not alone an adverse employment action. *See White v. Baxter Healthcare* Corp., 533 F.3d 381, 402 (6th Cir. 2008) (noting that a negative performance evaluation, without a resulting tangible employment action, is insufficient to show an adverse employment action); *Howard v. Bd. of Educ. of the Memphis City Schs.*, 70 F. App'x 272, 281 (6th Cir. 2003) (unpublished disposition) ("[U]nless the reprimand accompanied some other action, such as a demotion or salary reduction, it is not an adverse employment action." (internal citation and quotation omitted)); *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 409-10 (6th Cir. 1999) (holding that "receiv[ing] disciplinary actions in the form of counseling memoranda" and being more closely monitored by supervisors was not adverse employment action).

Scheduling matters are also typically not adverse employment actions. *Johnson v. United Parcel Serv.*, 117 F. App'x 444, 450 (6th Cir. 2004) ("Case law indicates that, absent changes in salary or the number of hours of work, scheduling matters would not normally classify as potential adverse employment actions.").

Again, if a plaintiff makes out a *prima facie* case of discrimination, I proceed through the *McDonnell Douglas / Burdine* burden-shifting analysis described above. *See, e.g.*, *DiCarlo*, *supra*, 358 F.3d at 414-15.

Plaintiff alleges multiple events that he contends amount to discrimination based on national origin or race: 1) a supervisor falsely accused plaintiff of having a short drawer; 2) a supervisor scheduled a part-time co-worker for more hours than plaintiff; 3) coworkers shunned plaintiff; 4)

13

coworkers gossiped about plaintiff; 5) defendant failed to provide a promised $1.00 per year hourly raise; and 6) harassment.

Defendant contends that these actions do not amount to actionable discrimination because plaintiff has failed to show any adverse employment action resulting therefrom or, in the alternative, has failed to show differential treatment.

### 1. Register Shortage Accusations

Plaintiff contends that a supervisor reprimanded him twice regarding cash shortages in his register. Plaintiff, however, admitted that he did not lose any pay as a result of these accusations and points to no other "adverse employment action" resulting from this alleged discrimination. This is insufficient to establish a *prima facie* case. *White*, *supra*, 533 F.3d at 402.

### 2. Hours Scheduled

Plaintiff alleges discrimination based on the fact that in May and June of 2007, a supervisor scheduled a part-time employee, Briscoe, for more hours than plaintiff. Unchallenged company records, however, show that Briscoe never actually worked more hours than plaintiff during these weeks.

Plaintiff has not provided any evidence that this scheduling disparity resulted in " a significant change in employment status  .  .  .  or a decision causing a significant change in benefits." *Id.*; *see also Johnson*, *supra*, 117 F. App'x at 450 (noting that scheduling matters are not normally adverse employment actions).

### 3. Shunning by Coworkers

Plaintiff alleges he was subject to discrimination as a result of his coworkers shunning him after AutoZone terminated Millsaps, the former store manager. He testified that "the rest of the crew

[was] less close to [him]" and that he "was put aside [and] nobody would talk to [him]." [Doc. 22, at 188].

      Plaintiff, however admits that he suffered no tangible adverse employment action as a result:

> Q: Okay. And during the time that they [coworkers] weren't speaking to you and they were shunning you, did that cause you to make less money?
> A: No.
> Q: Okay. It didn't impact your employment one way or the other whether they spoke to you?
> A: No, I still – my hours and my hourly wage was okay. But like I say, the dollar promised, I never seen it no more.
> Q: Okay. But in terms of your ability to do your job, work with customers, the fact that your – your coworkers weren't talking to you and shunning you[,] that didn't affect you?
> A: My working abilities, no.

[Doc. 22, at 189].

      Plaintiff also admits that after a period of time, his relationship with his coworkers went back to normal.

      Shunning or ostracizing of the sort described by plaintiff simply does not amount to an adverse employment action. *Johnson*, *supra*, 594 F.3d at 1216; *Stewart*, *supra*, 586 F.3d at 331-32; *Mlyncxak*, *supra,* 442 F.3d at 1061; *Flannery*, *supra*, 160 F.3d at 428.

### 4. Gossiping by Coworkers / Harassment by Customer

      Plaintiff alleges that gossiping among his coworkers amounts to discrimination. Plaintiff specifically contends that employees at his store, including then store manager Millsaps, fabricated a story about a customer who was upset with him and who threatened to come into the store and shoot him.

      Plaintiff also alleges that a former manager of the store came in and harassed him repeatedly. Again, plaintiff has pointed to no action resulting from this gossiping and harassment that

15

"constitutes a significant change in employment status . . . or a decision causing a significant change in benefits." *White*, *supra*, 533 F.3d at 402.

### 5. Raise

Plaintiff contends that at the time of his hire, Jim Pirc promised him a $1.00 per hour raise for each year plaintiff remained employed by defendant. Plaintiff has presented no evidence of the promised raise beyond his own testimony.

Although failure to receive a raise would be an adverse employment action because it is a "change in benefits," *id.*, plaintiff has produced no evidence that persons outside the protected class were given promised raises. As such, plaintiff cannot establish the fourth element of a *prima facie* case, which requires he show differential treatment. *Michael*, *supra*, 496 F.3d at 593 (stating that a plaintiff must show he was treated differently than a non-protected class employee for the same or similar conduct).

### 6. Harassment

Plaintiff lastly alleges harassment as discrimination. Defendant contends it is entitled to summary judgment on this claim because: 1) plaintiff has not identified severe or pervasive harassment; and 2) it promptly addressed the only instance of harassment plaintiff brought to its attention.

Plaintiff responds that "[a] close reading of Plaintiff's transcript reveals that this harassment was not a mere isolated incident, but a long history of harassment over a significant period of time." [Doc. 27, at 15].

Title VII prohibits racial harassment that creates a hostile or abusive work environment. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). A plaintiff must show: 1) he is a member of

16

a protected class; 2) he was subjected to unwelcomed racial harassment; 3) the harassment was race-based; 4) the harassment unreasonably interfered with his work performance by creating an environment that was intimidating, hostile or offensive; and 5) that the employer is liable.[10] *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) (citing *Hafford*, *supra*, 183 F.3d at 512).

To satisfy the fourth prong, plaintiff must show harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).[11] The severe or pervasive requirement has both an objective and a subjective component. *Id.* at 21-22. I must examine, under the totality of the circumstances, "'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (quoting *Harris*, *supra*, 510 U.S. at 23).

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms or conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

The Sixth Circuit has upheld grants of summary judgment where conduct was not severe or pervasive. *Clay*, *supra*, 501 F.3d at 708 (affirming district court's grant of summary judgment where plaintiff alleged fifteen incidents of harassment over two years and noting that "[f]or the most part,

---

[10] An employer is vicariously liable for discrimination by supervisors and liable for co-worker harassment if the employer knew or should have known of the harassment and did not implement appropriate corrective action. *Hafford*, *supra*, 183 F.3d at 513.

[11] Although *Harris* is a sexual harassment case, I refer to it because "the same principles that govern sexual harassment also govern claims of racial harassment." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).

17

the incidents complained of amounted to 'mere offensive utterances,' which are not actionable under Title VII" (internal quotation and citation omitted)); *Burnett v. Tyco Corp.*, 203 F.3d 980, 982-83 (6th Cir. 2000) (holding that three sexually offensive remarks by plaintiff's personnel manager over a six-month period were not commonplace, ongoing, or continuing and therefore not pervasive discriminatory conduct).

Plaintiff alleges racial harassment by three different individuals over a three-year period. These comments consist of: 1) former store manager Millsaps telling plaintiff and a co-worker not to speak Spanish and referring to Mexican American customers as "your people" and; 2) former co-worker Perez telling plaintiff to stop acting like a "stupid ass" and asking, in front of others, why plaintiff was not promoted; and 3) former store manager Johnson asking plaintiff whether he thought that English should be the official language and asking whether plaintiff had been to "Beaners," a local coffee shop.[12]

This evidence is insufficient to support a finding that, under the totality of the circumstances, the comments plaintiff identifies – though no doubt offensive and inappropriate – were severe or pervasive enough to create a hostile work environment. They were made by three different individuals over a three-year time period. They were not threatening or humiliating. Plaintiff, additionally, has not provided evidence that the comments "unreasonably interfered with [his] performance" at work. *Harris*, *supra*, 510 U.S. at 23. The comments were also isolated, and not pervasive. They are "mere offensive utterances," *id.*, or "offhand comments[] and isolated

---

[12] "Beaner's Coffee" changed its name to "Biggby Coffee" in 2007, citing concerns about the use of the word "beaner" as a disparaging term used against Hispanic Americans. *BEANER'S COFFEE to Rebrand as BIGGBY COFFEE*, http://www.biggby.com/bconnected/news.php?id=52 (September 15, 2007).

18

incidents," *Faragher*, *supra*, 524 U.S. at 778, and as such, plaintiff cannot make out an actionable hostile work environment claim.

## II. Retaliation

Title VII also contains an anti-retaliation provision which prohibits an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a).[13]

To establish a *prima facie* case of retaliation under Title VII, an employee must establish that: 1) he engaged in protected activity; 2) the employer knew of the exercise of the protected right; 3) the employer thereafter took a materially adverse action against plaintiff or subjected plaintiff to severe and pervasive retaliatory harassment; and 4) there was a causal connection between the protected activity and the materially adverse action or harassment. *See Morris v. Oldham County Fiscal Ct.,* 201 F.3d 784, 792 (6th Cir. 2000); *see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (modifying the third element of a *prima facie* case to require "materially adverse" action rather than "adverse employment action").

If plaintiff establishes a *prima facie* case, I proceed through the *McDonnell Douglas* burden-shifting described above. *See Morris*, *supra*, 201 F.3d at 793.

With regard to the third element of a *prima facie* case, the Supreme Court held that the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern*, *supra*, 548 U.S. at 67.

---

[13] "Federal law provides the applicable analysis for reviewing retaliation claims" under Ohio law, *Baker v. Buschman Co.*, 127 Ohio App. 3d 561, 568 (1998). As such, I address both of plaintiff's retaliation claims together.

In *Burlington Northern*, the Supreme Court held that plaintiff's burden of establishing a materially adverse action is less onerous in the retaliation context than in the anti-discrimination context. 548 U.S. at 67-69. A materially adverse action in the retaliation is any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal citation and quotation omitted).

Adverse action in the retaliation context is not limited to harms "that are related to employment or occur at the workplace." *Id.* at 57.

Under this more liberal definition, actions not materially adverse for purposes of an anti-discrimination claim may be deemed as such in the retaliation context. *See, e.g.*, *id.* at 69 (noting that a supervisor's failure to invite an employee to lunch could, under certain circumstances, amount to materially adverse retaliation action).

Whether an action is materially adverse depends on the circumstances surrounding the action. *Id.* at 69. The Court cautioned that "it is important to separate significant from trivial harms" and stated that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68.

After *Burlington Northern*, the Sixth Circuit has held that denial of a lateral transfer and bad employment evaluations did not rise to the level of materially adverse actions because they did not "significantly impact [plaintiff's] professional advancement and would not have dissuaded a reasonable person from filing a Title VII claim." *James v. Metropolitan Gov't of Nashville*, 243 F. App'x 74, 79 (6th Cir. 2007) (unpublished disposition). The court in *James* noted that the

20

evaluations plaintiff received after she filed EEOC charges were "not markedly worse than earlier ones and the evaluations did not affect her earnings." *Id.*

By contrast, markedly worse performance evaluations given after an employee took protected action that significantly impact an employee's wages or professional advancement are materially adverse. *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424, 433 (6th Cir. 2007) (unpublished disposition).

To establish the causal connection element of a *prima facie* case, a plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action. " *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal quotation omitted); *see also Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003) ("[T]he plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects.").

The Sixth Circuit has not established a black letter rule regarding the role of temporal proximity in establishing causation.

If an adverse employment action "occurs *very close in time* after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (emphasis added) (holding that plaintiff established causation element when employer laid plaintiff off on the same day employer learned of EEOC charge); *Howington v. Quality Restaurant Concepts, LLC*, 298 F. App'x 436, 447 (6th Cir. 2008) (holding that two-day lapse between protected action and suspension is sufficient

21

to infer causal connection); *see also Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435-36 (6th Cir. 2009) (holding that a three month gap between protected activity and adverse employment action in conjunction with heightened scrutiny of plaintiff's work and harassment was sufficient to show causation).

If, however, "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality" under the fourth element. *Mickey*, *supra*, 516 F.3d at 525; *see also Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008) (unpublished disposition) (rejecting plaintiff's claim that a two-month gap between EEOC charge and adverse employment action constituted sufficient evidence of causation).

### A. Failure to Promote

Plaintiff claims that AutoZone retaliated against him based on his OCRC complaints by promoting Ketron and Perez, and by hiring Rometski as a "gray shirt."

Defendant contends that it is entitled to summary judgment on this claim because: 1) plaintiff cannot establish a causal connection between his complaints and the failure to promote; or alternatively, 2) plaintiff cannot show defendant's proffered reason for the promotions is pretextual.

### 1. *Prima Facie* Case

Defendant contends that plaintiff cannot satisfy the fourth element with regard to his promotion claim because he has shown nothing more than attenuated temporal proximity between his complaints and AutoZone's decisions to promote other employees.[14]

---

[14] Plaintiff can satisfy the first two elements of a *prima facie* case. He filed multiple charges with OCRC and defendant does not dispute its knowledge of the charges.

22

Plaintiff argues he has adequately shown causation based on the "temporal proximity plus increased scrutiny and attempts to falsely write Plaintiff up." [Doc. 27, at 16].

Plaintiff filed his first discrimination complaint with the OCRC on December 12, 2006, alleging Millsaps harassed him about speaking Spanish at work.

Plaintiff filed his second discrimination complaint on June 13, 2007, alleging that: 1) his hours were less than those of a part-time employee; 2) he was accused of having a short drawer; and 3) a white female was hired in April, 2007. AutoZone promoted Ketron in October, 2007.

Plaintiff filed his third discrimination complaint on November 19, 2007, alleging defendant discriminated against him and retaliated by promoting Ketron. AutoZone promoted Perez in March of 2008.

Plaintiff filed his fourth discrimination complaint on April 23, 2008, alleging defendant retaliated by promoting Perez. AutoZone re-hired Rometski to a gray shirt position sometime in 2009.

The temporal proximity between the allegedly retaliatory promotions and plaintiff's OCRC complaints is significantly longer than the single day found sufficient in *Mickey*, *supra*, 516 F.3d at 526, or the two day lapse in *Howington*, *supra* 298 F. App'x at 447.

Approximately four months elapsed between plaintiff's second discrimination complaint and Ketron's promotion. Plaintiff also alleges that around this time period Johnson accused him of having a short cash drawer and Fitch attempted to give plaintiff a written warning for helping a Spanish-speaking customer out of turn. Plaintiff testified to an incident where a store manager mentioned receiving plaintiff's EEOC letter and stating: "[H]ere we go again." [Doc. 22, at 195]. It is unclear from the record, however, when this comment occurred, or to which OCRC complaint

23

it related. These actions, in addition to the four month time period, might be enough for plaintiff to demonstrate causation. *See Hamilton*, *supra*, 556 F.3d at 435-36.

Similarly, approximately four months elapsed between plaintiff's third OCRC complaint and Perez's promotion.

At least eight months elapsed between plaintiff's fourth OCRC complaint and Rometski's re-hire. Plaintiff has pointed to no other conduct indicating the hiring was retaliatory. I find, thus, that plaintiff cannot establish a *prima facie* case of retaliation with regard to Rometski. *Mickey*, *supra*, 516 F.3d at 525; *Arendale*, *supra*, 519 F.3d at 606.

It is unnecessary, however, for me to resolve the causation issue with regard to the Ketron and Perez promotions because, in any case, plaintiff cannot show pretext.

### 2. Pretext

Assuming *arguendo* that plaintiff has adequately established a *prima facie* case, the burden shifts to defendant to set forth legitimate nondiscriminatory reasons for promoting Ketron and Perez. *Morris*, *supra*, 201 F.3d at 792.

Pinkerton states he promoted Ketron because he was a reliable employee without disciplinary problems. Pinkerton promoted Perez because he was a good leader and did not have any reliability problems. Pinkerton points to plaintiff's disciplinary and attendance problems, and lack of leadership skills as reasons why Pinkerton chose not to promote plaintiff.

Defendant has thus provided legitimate nondiscriminatory reasons for the promotions. *See Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978) (noting that "the employer's burden is satisfied if he 'explains what he has done' or 'produces evidence of legitimate nondiscriminatory reasons'").

24

The burden therefore shifts back to plaintiff to show that defendant's proffered reasons are pretext. *Abbott*, *supra*, 348 F.3d at 542. Plaintiff can establish pretext by showing that the reason: 1) had no basis in fact, 2) did not actually motivate the challenged conduct; or 3) is insufficient to explain the challenged conduct. *Id.*

Plaintiff cannot show that defendant's reasons were pretextual for the same reason he can't make out a *prima facie* case on his failure to promote discrimination claim – defendant has offered reasons for each promotion, and plaintiff has produced no evidence that undercuts defendant's proffered rationales. Rather, as discussed above, plaintiff simply points to other aspects of each promoted employee's background.

Plaintiff has thus not created a genuine issue of material fact that defendant's proffered reasons are pretextual and summary judgment is granted to defendants on each of plaintiff's failure to promote retaliation claims.

### B. Other Retaliation Claims

Plaintiff alleges retaliation based on the same actions he alleges are discriminatory: 1) a supervisor's accusing plaintiff of shortages on his cash register; 2) scheduling a part-time coworker for more hours than plaintiff; 3) shunning by his coworkers after Millsaps was fired; 4) gossiping among store employees; 5) failing to give plaintiff a promised raise; and 6) harassment.

Defendant contends that it is entitled to summary judgment on all of plaintiff's retaliation claims because: 1) plaintiff has not shown an "adverse employment action"; and 2) plaintiff has not shown a causal connection between his OCRC complaints and any of the actions taken.

### 1. Register Shortage Accusations

Plaintiff alleges that in 2007 a supervisor reprimanded him twice for drawer shortages. Plaintiff has provided no evidence of any "injury or harm," produced by these reprimands, *Burlington Northern*, *supra*, 548 U.S. at 67, and I find the action not materially adverse. *See Jones*, *supra*, 243 F. App'x at 79.

### 2. Scheduling

As discussed above, plaintiff has not shown that scheduling a co-worker for more hours than plaintiff resulted in any harm. As such, plaintiff cannot establish a *prima facie* case of retaliation on these grounds. *Burlington Northern*, *supra*, 548 U.S. at 67 (stating that anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm").

### 3. Shunning

As discussed above, plaintiff alleges that his coworkers shunned him after Millsaps was fired. Plaintiff, however, admitted that this did not affect his employment, and that his relationship went back to normal with his coworkers.

I find therefore that under the circumstances, this is more of a "petty slight or minor annoyance," *id.* at 68, and not a materially adverse action that "significantly impact[ed] plaintiff's professional advancement." *Jones*, *supra*, 243 F. App'x at 79.

### 4. Gossiping

As discussed above, plaintiff alleges that Millsaps and his coworkers fabricated stories about him and gossiped. Plaintiff testified that this gossiping occurred over a two week period and after he asked Millsaps not to bring it up again, Millsaps stopped.

26

I find that plaintiff cannot make out a *prima facie* retaliation case because this is not a materially adverse action. It did not "significantly impact [plaintiff's] professional advancement and would not have dissuaded a reasonable person from filing a Title VII claim." *James*, *supra*, 243 F. App'x at 79. Such gossiping is more adequately described as a "minor annoyance[] that often takes place at work." *Burlington Northern*, *supra*, 548 U.S. at 68.

### 5. Raise

Plaintiff also cannot establish a *prima facie* retaliation case regarding the promised raise. According to plaintiff's own admission, he did not receive the promised $1.00 per year raise after 2005. Plaintiff filed his first OCRC complaint in December, 2006. Plaintiff thus cannot show that failure to provide the raise was retaliation for engaging in protected activity because failure to provide the raise occurred *before* his OCRC complaints. *Morris*, *supra*, 201 F.3d at 792.

### 6. Retaliatory Harassment

Plaintiff alleges that he was retaliated against because Millsaps instructed him not to speak Spanish in the store and based on harassment from his coworker, Perez.[15]

Just as with discrimination based on harassment, retaliatory harassment must be "severe and pervasive." *See Morris*, *supra*, 201 F.3d at 792.

For the same reasons stated above regarding discriminatory harassment, plaintiff has not established that the same harassment, even if retaliatory, is sufficiently severe or pervasive that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern,* 548 U.S. at 68.

---

[15] The Sixth Circuit has held that retaliatory harassment by coworkers is actionable in certain circumstances. *Hawkens v. Anheuser-Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008).

27

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT defendant's motion for summary judgment [Doc. 23] be, and the same

hereby is granted.

So ordered.


s/James G. Carr
James G. Carr
Chief Judge